Steven A. GALLANT, Jr., Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Argued May 8, 2002.

Decided June 26, 2002.

**2**

Jack W. Cline, Mercer, for appellant.

Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

Before COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Steven A. Gallant, Jr. (Licensee) appeals from an order of the Court of Common Pleas of Mercer County (trial court) dismissing his appeal and sustaining the one-year suspension of his driving privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDot).

On October 23, 1999, Licensee was arrested in Cook County, Illinois and charged with Driving Under the Influence (DUI) of alcohol. On December 13, 1999, he was convicted of DUI and Illinois sent Pennsylvania a notice of the conviction. PennDot then sent Licensee an official notice stating that his operating privilege was being suspended for one year pursuant to 75 Pa.C.S. § 3731 (relating to driving under the influence of alcohol) and the Pennsylvania Driver License Compact (Compact),[1] 75 Pa.C.S. § 1581, as a result of his Illinois conviction.[2] Licensee appealed his suspension to the trial court.

At a *de novo* hearing, PennDot offered into evidence a packet of documents to

---

1. The Driver License Compact is an agreement among most of the states to promote compliance with each party state's motor vehicle law. Pennsylvania became a party state to the Compact in 1996 by adopting Sections 1581–1585 of the Motor Vehicle Code. In order for PennDot to treat an out-of-state conviction as though it occurred in Pennsylvania, the out-of-state conviction must be from a state that has entered the Compact

and enacted a statute to that effect. Illinois is a party state. *See Leftheris v. Department of Transportation, Bureau of Driver Licensing,* 734 A.2d 455 (Pa.Cmwlth.1999); Ill.Rev.Stat. 1981, ch. 95½., pars. 6–700 to 6–708.

2. Specifically, the notice stated:

Section 1581 of the Vehicle Code requires the Department to treat certain out of state

establish the Illinois conviction. Among those documents was the Illinois report of conviction that had been electronically transmitted to PennDot, but on its face did not state that it came from Illinois licensing authority, the Secretary of State; only that it was from the State of Illinois or maybe Cook County Court. Licensee objected to its admission arguing that it was not properly certified from the Illinois licensing authority, but the trial court overruled his objection, noting that the document was from the State of Illinois and was also admissible under 75 Pa.C.S. § 1550(d) relating to out-of-state documentation in non-Compact situations. In addition to those documents, PennDot called Licensee to testify on cross-examination, again over his objection, which the trial court overruled, and Licensee testified that he had pled guilty to his DUI charge in Illinois and had been convicted of DUI on December 13, 1999. Relying on Licensee's testimony alone, the trial court sustained the one-year suspension of his driving privilege. This appeal followed.[3]

Licensee contends that the trial court erred in sustaining the one-year suspension of his driving privilege because the document that PennDot offered into evidence from the State of Illinois was not from the state's licensing authority as required by the Compact. In support of this contention, Licensee relies on this Court's decision in *Tripson v. Department of Transportation, Bureau of Driver Licensing*, 773 A.2d 195 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 690, 796 A.2d 320 (2002). In that case, PennDot received notice of Tripson's conviction for DUI in West Virginia from a district magistrate court and not from the West Virginia licensing authority, and it relied on those documents to suspend his Pennsylvania driving privilege. On appeal, we held that Article III of the Compact required that the licensing authority of the reporting state in—that case, West Virginia—provide a report of conviction to PennDot, the home state's licensing authority. Because the West Virginia documents were not from the state's licensing authority, we reversed PennDot's suspension of Tripson's driving privilege.

PennDot, however, argues that the report of Licensee's conviction did come from the Illinois licensing authority because it came from the Illinois Secretary of State. It further argues that the document was sufficient to support the suspension because it was electronically transmitted by the Illinois licensing authority, and then PennDot's custodian of records, Rebecca L. Bickley, the Director of the Bureau of Driver Licensing, certified that it had been received by the Secretary of State from Illinois.

 Initially, we note that in an appeal to the trial court from a suspension of a licensee's operating privilege for a foreign conviction, pursuant to the Compact, PennDot has the burden of proving that

---

convictions as though they had occurred in Pennsylvania. Therefore, as a result of the Department receiving notification from ILLINOIS of your conviction on 12/13/1999 of an offense which occurred on 10/23/1999, which is equivalent to a violation of Section 3731 of the Pa. Vehicle Code, DRIVING UNDER INFLUENCE, your driving privilege is being SUSPENDED FOR A PERIOD OF 1 YEAR(S), as mandated by Section 1532B of the Vehicle Code.

3. Our scope of review of the trial court's decision dismissing Licensee's appeal is limited to determining whether its findings of fact were supported by competent evidence, whether it committed an error of law or whether it abused its discretion. *Kline v. Department of Transportation, Bureau of Driver Licensing*, 725 A.2d 860 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 560 Pa. 714, 743 A.2d 924 (1999).

the documents it received to support the suspension were received from the licensing authority of the foreign state. *Boots v. Department of Transportation, Bureau of Driver Licensing,* 736 A.2d 64 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 564 Pa. 722, 766 A.2d 1242 (1999). Article III of the Compact provides:

### Reports of Conviction

The *licensing authority of a party* state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith. (Emphasis added.)

Under the Illinois Compiled Statutes Annotated, 625 ILCS 5/6–708(b), the Secretary of State is the licensing authority.[4] After reviewing the document in question, we disagree with PennDot that the document it received was sent by the licensing authority of the State of Illinois. The heading of the document provides:

STATE OF ILLINOIS
REPORT OF CONVICTION
COOK—3RD COUNTY COURT
PHONE: 847–818–3000

■ Following that information is the name of Licensee, his address, sex, date of

birth, the court case number, the court in which he was tried, his arrest date, his conviction date, his original offense, his guilty plea and the comment: out-of-state driver received supervision in IL. The bottom of the document provides control data and indicates that the document was computer generated and verified to the original source document. Nowhere does the document specify that it is from the Secretary of State, and it is unclear from the heading whether the document is from the State of Illinois or the State of Illinois 3rd County Court. "Despite argument to the contrary, reports of convictions submitted to the Department pursuant to the Compact must be received from the proper licensing authority of the reporting state. The Department may not certify that the documents are reports of convictions from other jurisdictions' licensing authorities if the documents themselves contain no such certification from the reporting jurisdiction." *Tripson,* 773 A.2d at 197. Just because PennDot certified that the document was from Illinois Secretary of State did not make it so without the proper certification from Illinois, and because it lacked the proper certification, it did not meet the requirement of Article III of the Compact. *See also Boots.*

■ Even if the document was not certified in accordance with the Compact, PennDot argues that because the document was certified by its Director of the Bureau of Driver Licensing that it was received by the Illinois Secretary of State, under 75 Pa.C.S. § 1550(d), that certification was prima facie evidence of the con-

---

4. Illinois Compiled Statutes Annotated, 625 ILCS 5/6–708(b), provides:

As used in the compact, the term "licensing authority" with reference to this state, means the Secretary of State. The Secretary of State shall furnish to the appropri-

ate authorities of any other party state any information or documents reasonably necessary to facilitate the administration of Sections 6–702, 6–703 and 6–704 of the compact [625 ILCS 5/6–702, 625 ILCS 5/6–703 and 625 ILCS 5/6–704].

viction creating a rebuttable presumption that the facts and information contained in the document were correct and shifted the burden to Licensee to present evidence to rebut the presumption. At oral argument, PennDot further argued that regardless of the document it receives, i.e., whether it contains any inkling of the authority of the sending state, if it determines that the document is sufficient to comport with the Compact, that is sufficient to prove an out-of-state conviction. 75 Pa.C.S. § 1550(d) provides:

> **(d) Out–of–State documentation.** In any proceeding under this section [regarding judicial review of the suspension of operating privileges], documents received by the department from the courts or administrative bodies of other states or the Federal Government shall be admissible into evidence to support the department's case. . . . In addition, if the department receives information from courts or administrative bodies of other states or the Federal Government by means of electronic transmission, it may certify that it has received the information by means of electronic transmission and *that certification shall be prima facie proof of the adjudication and facts contained in such an electronic transmission.* (Emphasis added.)

However, this identical argument was made in *Boots,* and in that case, we held that the more specific provision of Article III of the Compact regarding how out-of-state convictions were to be reported controlled over the more general provision of 75 Pa.C.S. § 1550(d). We explained:

> We agree that § 1550(d)(1) states the general rule that such documents are admissible in statutory appeals. Section 1550(d)(1) provides that documents sent from any courts or administrative agencies of another state or federal government are admissible. However, 75 Pa. C.S. § 1581 [the Compact], Article III specifies from which agency documents must be sent in proceedings initiated under the Interstate Compact: "the **licensing authority** of a party state **shall** report each conviction of a person from another party state . . ." (Emphasis added). Thus the more specific provision of 75 Pa.C.S. § 1581, which addresses proceedings initiated under the Compact as is the case here, controls over the more general provision of 75 Pa.C.S. § 1550(d)(1). *See* 1 Pa.C.S. § 1933 ("the special provision shall prevail and shall be construed as an exception to the general provision."). (Emphasis in original.)

*Boots,* 736 A.2d at 66. Just because PennDot certifies that a document comes from a licensing authority, even though there is no such indication on the document itself, that certification is insufficient to support that the document is what it is purported to be without the proper certification from the sending state. Without the proper certification, the entire document is in question, not just its contents. Moreover, by allowing PennDot to admit a document into evidence that does not meet the requirements under the Compact and giving it the presumption that it meets the requirements is to give it an unfair advantage over the licensee who must then prove that document is not what it purports to be.[5]

PennDot argues, though, that our Supreme Court's decision in *Department of Transportation v. McCafferty,* 563 Pa. 146, 758 A.2d 1155 (2000), now controls. In that case, our Supreme Court held that

---

5. Additionally, because different states have various methods of reporting convictions, it is even more of a necessity that PennDot carefully ensure that each document it receives is from the licensing authority as required under the Act and not from an unknown entity.

even if a document from a reporting state lacked certain information that was specified in Article III, technical and immaterial defects in the report did not prevent Penn-Dot from relying on that information to support a suspension based on a conviction. However, *McCafferty* dealt with omissions contained in the certification of the licensee's conviction sent by the licensing authority. In this case, we are unable to determine whether the licensing authority actually sent the document. Such a quandary is not just a technical and immaterial defect but essential for determining whether the document itself may be relied upon. *Tripson.* Therefore, *McCafferty* has no application to the facts of this case.

■■■ Even if the document was not properly certified under Article III of the Compact, PennDot argues that Licensee's testimony that he was convicted for DUI in Illinois, coupled with the document, was sufficient to support a suspension. However, because the document failed to meet the requirements of Article III of the Compact and is not admissible under Section 75 Pa.C.S. § 1550(d), the question then is whether Licensee's testimony alone was sufficient to support a suspension under the Compact. In *Department of Transportation, Bureau of Traffic Safety v. Cox*, 92 Pa.Cmwlth. 591, 499 A.2d 1140 (1985), where PennDot came to court without the official certification of a licensee's conviction supporting his license suspension and it called the licensee on cross-examination to testify regarding his conviction, we held that the trial court did not abuse its discretion when it refused to allow PennDot to rely on the licensee's testimony "to embark upon what would be an unsound practice—reliance upon the testimony of drivers to prove their own

convictions, in place of the proper official certifications which are necessarily available in their own files." *Id.* at 1141. We concluded that the best evidence of a conviction was the duly certified court record stating:

> More than a century ago, in *Buck v. Commonwealth*, 107 Pa. 486 (1884), the Pennsylvania Supreme Court held that a party cannot prove a conviction by putting the question to the allegedly convicted person upon cross-examination. "The proper mode of proving a conviction for ... any ... crime ... is the production of the record. It is the highest and best evidence." 107 Pa. at 491.

*Cox*, 499 A.2d at 1141. *See also Rhoads v. Commonwealth of Pennsylvania*, 153 Pa. Cmwlth. 155, 620 A.2d 659 (1993). Despite the fact that the purpose of the Compact is to promote compliance with each party state's motor vehicle law, and Pennsylvania has a strong public policy to protect citizens from drunk drivers, PennDot must still provide certified documentation of a licensee's conviction for DUI from the reporting state. If that documentation is not available or is deficient, PennDot cannot solely rely on the testimony of the licensee to meet its burden.[6] Because PennDot, in this case, failed to provide such documentation to support Licensee's conviction as required under the Compact, Licensee's admission alone was insufficient to support a one-year suspension of his driving privilege.

Accordingly, the decision of the trial court is reversed and the one-year suspension of Licensee's driving privilege is rescinded.

Judge SIMPSON dissents.

---

6. As we stated in *Boots*, "[w]e note that this requirement [of providing certified documentation from the reporting state] is not onerous in that the Department can always request the necessary information be sent from the licensing authority of party states." 736 A.2d at 66.

## ORDER

AND NOW, this *26th* day of *June*, 2002, the order of the Court of Common Pleas of Mercer County, dated August 23, 2001, is reversed.

DISSENTING OPINION BY Judge COHN.

Respectfully, I dissent.

The majority relies on *Tripson v. Department of Transportation, Bureau of Driver Licensing*, 773 A.2d 195 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 690, 796 A.2d 320 (2002). I believe that *Tripson* was wrongly decided.[1] Additionally, assuming *arguendo*, the validity of the *Tripson* decision, the case *sub judice* is factually distinguishable such that *Tripson* does not control our determination of this matter.

### I. *Tripson was wrongly decided*

In *Tripson*, the Bureau of Driver Licensing (DOT) suspended the motor vehicle license of a Pennsylvania driver based upon that driver's conviction in West Virginia for driving under the influence. "The trial court admitted into evidence, over objection, a number of documents signed and sealed by the Secretary of Transportation and by the Director of the Bureau of Licensing." *Tripson*, 773 A.2d at 196. The documents consisted of a criminal case history and an abstract of judgment. *Id.* The trial court dismissed the licensee's appeal. The licensee appealed to this Court, arguing that 75 Pa.C.S. § 1550(d)(1) does not permit DOT to certify the identity of the administrative body of the other state and that the "Department's certification does not identify or misidentifies the administrative body from which it received the documents." *Id.* at 197. In response,

DOT argued that the documents became the property of DOT because they had been forwarded by West Virginia pursuant to Article III of the Driver's License Compact (Compact), Section 1581 of the Vehicle Code, 75 Pa.C.S. § 1581, and that these documents were admissible under 42 Pa. C.S. §§ 6103 and 6109, as well as 75 Pa. C.S. § 1516(b).

In rejecting this argument, this Court stated that

> Despite arguments to the contrary, reports of convictions submitted to the Department pursuant to the Compact must be received from the proper licensing authority of the reporting state. *The Department may not certify that the documents are reports of convictions from other jurisdictions' licensing authorities if the documents themselves contain no such certification from the reporting jurisdiction.* Therefore, the Department's argument that the documents it offered were properly admitted as Department records, pursuant to 75 Pa.C.S. § 1516(b) is without merit if the Department cannot demonstrate that the documents were received from the licensing authority of West Virginia.

*Tripson*, 773 A.2d at 197 (emphasis added). This Court also agreed with the licensee's argument that "the Department has failed to meet its burden of demonstrating that the documents were received from the licensing authority of the party state" based on *Boots v. Department of Transportation, Bureau of Driver Licensing*, 736 A.2d 64 (Pa.Cmwlth.1999), *petition for allowance of appeal denied*, 564 Pa. 722, 766 A.2d 1242 (1999). *Id.* The Court noted that:

> [b]oth the abstract of judgment and the criminal case indicate that they came from a district magistrate's office. Thus

1. *Tripson* was decided on March 21, 2001, prior to the time I assumed the bench. This

is my first opportunity to express my view on this issue.

the Department's certification on its face does not create the rebuttable presumption of correctness that it claims Tripson must overcome.

*Tripson,* 773 A.2d at 198. We then noted the decisions of our Supreme Court in *Harrington v. Department of Transportation, Bureau of Driver Licensing,* 563 Pa. 565, 763 A.2d 386 (2000), and *Department of Transportation v. McCafferty,* 563 Pa. 146, 758 A.2d 1155 (2000) as holding:

the requirements of Article III of the Compact are mandatory for a party state reporting a conviction within its jurisdiction, but they do not prohibit the home state's licensing authority from relying upon information contained in the report even if the report lacks certain information required under Article III.

*Id.* We distinguished the facts of the case, noting that the issue "is not whether the technical reporting requirements were met under Article III ... [but] [r]ather ... whether the documents themselves may be relied upon as the basis for the reciprocal suspension." *Id.* The Court agreed with the licensee that this was "more than a mere technical requirement." *Id.*

2. Article I

Findings and Declaration of Policy
(a) The party states find that:
(1) The safety of their streets and highways is materially affected by the degree of compliance with State and local ordinances relating to the operation of motor vehicles.
(2) Violation of such a law or ordinance is evidence that the violator engages in conduct which is likely to endanger the safety of persons and property.
(3) The continuance in force of a license to drive is predicated upon compliance with laws and ordinances relating to the operation of motor vehicles, in whichever jurisdiction the vehicle is operated.

3. Article I

* * *

(b) It is the policy of each of the party states to:

Respectfully, I do not believe that *Tripson* is in accordance with: the policies and terms of the Compact; the legislative enactments and judicial decisions made in response to our Court's decisions applying the Compact; and, the evidentiary rules established by our Legislature. As such, I believe it should be overruled.

A. *Background of the Compact*

In 1996, the General Assembly enacted the Compact. In Article I of this section, the General Assembly adopted several factual findings[2] on which its enactment was predicated and also adopted policies to be achieved through the Compact.[3] The findings and policies essentially provided that the safety of residents is affected by a motor vehicle operator's compliance with the motor vehicle laws. To promote compliance with these laws, the member states of the Compact treat certain traffic violations committed in other states as violations within their own state. To this end, Article III of the Compact imposed an obligation on states to forward reports of convictions of certain motor vehicle violations to the home state of licensees.[4] Arti-

(1) Promote compliance with the laws, ordinances and administrative rules and regulations relating to the operation of motor vehicles by their operators in each of the jurisdictions where such operators drive motor vehicles.
(2) Make the reciprocal recognition of licenses to drive and eligibility therefor more just and equitable by considering the overall compliance with motor vehicle laws, ordinances and administrative rules and regulations as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states.

4. Article III

Reports of Conviction
The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdic-

cle IV of the Compact then imposed on the home state receiving such a report a requirement to treat the out-of-state conduct as if it occurred within their state and to impose the corresponding suspension or revocation of license.[5] The final article of this section notes that "[t]his compact shall be liberally construed so as to effectuate the purposes thereof." 75 Pa.C.S. § 1581.

Article VII of the Compact provides that the head of the licensing authority for a state is the administrator of the Compact for that state, that the administrator of each party state has an obligation to "furnish to the administrator of each other party state any information or documents reasonably necessary to facilitate the administration of this compact," and that "[t]he administrators, acting jointly, shall have the power to formulate all necessary and proper procedures for the exchange of information under this compact." 75 Pa. C.S. § 1581.

To this end, the Driver License Compact Commission, consisting of the administrators of each of the Compact states, has promulgated administrative procedures to facilitate the exchange of necessary information to effectuate the provisions of the Compact. *The Driver License Compact Administrative Procedure Manual 1990* (Manual 1990). These standards provide that a reporting state meets its obligations under Article III when the reporting state provides either a court record abstract, a copy of the traffic citation that shows the final disposition, or any other form of data transfer that meets certain specificity requirements.[6] These specificity require-

tion to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.

5. Article IV

Effect of Conviction
(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of· convictions for:
(1) manslaughter or negligent homicide resulting from the operation of a motor vehicle;
(2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle;
(3) any felony in the commission of which a motor vehicle is used; or

(4) failure to stop and render aid in the event of a motor vehicle accident resulting in the death or personal injury of another.
(b) As to other convictions, reported pursuant to Article III, the licensing authority in the home state shall give such effect to the conduct as is provided by the laws of the home state.
(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) of this article as being applicable to and identifying those offenses or violations of a substantially similar nature and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

6. 2.4.3 Form of Report

The form of the report of conviction may be any of the following:
2.4.3.1. A copy of the abstract of court record.
2.4.3.2. A copy of the traffic citation showing final disposition.
2.4.3.3. Any paper document, magnetic medium, or electronic transmission which contains the minimum data described in section 2.4.4.

ments, in large part mirror the specific information listed in Article III.[7]

Neither the Compact provisions nor the regulations require that the licensing authority of a reporting state prepare a separate report. Rather, the provisions only require that it forward to the home state a report containing the relevant information. Additionally, neither the Compact provisions nor the regulations require that the administrator or any official certify the report.

The effect of these provisions is that when a driver with a Pennsylvania driver's license is convicted of DUI in a court of a member state, the licensing authority of the member state forwards a report of this conviction to Pennsylvania. When the Pennsylvania Department of Transportation receives the report, it treats the conviction as if the incident had occurred within the Commonwealth, applying the sanction given for DUI. In Pennsylvania, this means a license suspension.[8]

### B. Initial Interpretation of the Compact by the Commonwealth Court

This court initially interpreted the terms of the Compact quite strictly. *See, e.g., Mazurek v. Department of Transportation, Bureau of Driver Licensing*, 717 A.2d 23, (Pa.Cmwlth.1998), *rev'd*, 563 Pa. 343, 760 A.2d 848 (2000).[9] The case of *Boots* relied upon by this Court in *Tripson*, is illustrative. In *Boots*, this Court affirmed a trial court decision that sustained a licensee's appeal of her license suspension. The suspension was entered under the Compact based upon a conviction for driving under the influence in Indiana. At a hearing before the trial court, DOT sought to produce documents it had received from Indiana, including "an 'Information and Summons'... an 'Abstract of Court Record' and an 'Order of Conditional Probation.'" *Boots*, 736 A.2d at 65 (citations omitted). The licensee objected to this documentary evidence on the basis that it

---

(Manual 1990 at 14.)

7. 2.4.4. Data Content

Each report sent a jurisdiction[sic] shall clearly identify the report as a report of conviction and identify the jurisdiction that is the source of the report. If the report is other than an abstract of court record, all data elements must meet applicable ANSI–D–20 standards. Data for each conviction shall:
2.4.4.1. Clearly identify the person convicted. Minimum data requirements are, name, address, sex, date of birth, driver license number, and any available identifying number, such as social security number.
2.4.4.2. Describe the violation. Data shall include the section of the statute, code or ordinance violated along with a common English language description of the offense and coded in accordance with ANSI–D–20.
2.4.4.3. Identify the court in which action was taken.
2.4.4.4. Specify year, month and day of both the arrest and the conviction.
2.4.4.5. Indicate whether a plea of guilty or not guilty was entered, or the conviction was the result of the forfeiture of bail, bond or

other security; and include any special findings made in connection therewith.
2.4.4.6. Indicate whether the violation was committed in a commercial motor vehicle.
\* \* \*
(Manual 1990 at 14–15.)

8. § 1532. Revocation or suspension of operating privilege
\* \* \*
(c) Suspension.
\* \* \*
(3) The department shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3731 (relating to driving under influence of alcohol or controlled substance) or 3733 (relating to fleeing or attempting to elude police officer), or substantially similar offenses reported to the department under Article III of section 1581 (relating to Driver's License Compact), ....

9. *See generally Harrington*, 563 Pa. at 570, n. 3, 763 A.2d at 389, n. 3 (list of Commonwealth Court cases strictly interpreting Article III Compact Provisions).

did not comply with the requirements of Article III of the Compact, which requires the licensing authority of each state to report each conviction. Although it is not clear if the trial court precluded introduction of the documents into evidence, the trial court did conclude that DOT failed to meet its burden of proof because it did not provide a document from the licensing authority of the state of Indiana in accordance with Article III of the Compact. This Court agreed with the trial court's conclusion, noting that:

> [t]he Department initially argues that the documents were admissible pursuant to 75 Pa.C.S. § 1550(d)(1) which provides in relevant part that "[i]n any proceeding under this section [granting a person whose license has been suspended a right of appeal to a court] documents received by the department from the courts or administrative bodies of other states or the federal government shall be admissible into evidence to support the department's case." We agree that § 1550(d)(1) states the general rule that such documents are admissible in statutory appeals. Section § 1550(d)(1) provides that documents sent from any courts or administrative agencies of another state or federal government are admissible. However, 75 Pa.C.S. § 1581, Article III specifies from which agency documents must be sent in proceedings initiated under the Interstate Compact: "the **licensing authority** of a party state **shall** report each conviction of a person from another party state . . . ." (emphasis added). Thus, the more specific provision of 75 Pa.C.S. § 1581, which addresses proceedings initiated under the Compact as is the case here, controls over the more general provision of 75 Pa.C.S. § 1550(d)(1). *See* 1 Pa.C.S. § 1933 ("the special provision shall prevail and shall be construed

as an exception to the general provision").

*Boots*, 736 A.2d at 66 (emphasis in original). In reaching this decision, we relied on our decision · in *Mazurek*, noting that

> [t]his disposition comports with our recent interpretation of 75 Pa.C.S. § 1581 Article III in *Mazurek v. Department of Transportation, Bureau of Driver Licensing*, 717 A.2d 23 (Pa.Cmwlth.1998) wherein we construed the word "shall" in Article III as being mandatory. In *Mazurek*, we held that the word "shall" evidences a legislative intent that requires the report sent by the licensing authority to contain certain information and if that report lacks such information, it is incompetent to support the Department's suspension of a license. Here, we likewise hold that the words "the licensing authority of a party state shall report" evidences a legislative intent to require that the licensing authority be the reporting body.

*Boots*, 736 A.2d at 66. On the basis of our interpretation of the legislative intent that the terms of the Compact be strictly interpreted and complied with, we affirmed the trial court's decision that sustained the licensee's appeal. This Court used *Boots* as the primary authority in *Tripson*.

### C. *Repudiation of our Strict Analysis by Both the Legislature and the Pennsylvania Supreme Court*

Several months after our decision in *Mazurek*, the General Assembly very clearly indicated their disagreement with our interpretation of the legislative intent behind the Compact. On December 21, 1998 the Legislature amended 75 Pa.C.S. § 1584 of the Compact, adding the following sentence:

> The omission from any report received by the department from a party state of any information required by Article III

of the compact shall not excuse or prevent the department from complying with its duties under Articles IV and V of the compact.

75 Pa.C.S. § 1584. In *Zalewski v. Department of Transportation, Bureau of Driver Licensing,* 767 A.2d 19, 23, n. 10 (Pa. Cmwlth.2001), we noted that "[t]his amendment was necessitated by this Court's holdings in several cases mandating strict compliance with all of the reporting requirements of Article III of the Compact." *See also Catanzarite v. Department of Transportation, Bureau of Driver Licensing,* 765 A.2d 1178, 1182 (Pa. Cmwlth.2001), *petition for allowance of appeal denied,* 566 Pa. 668, 782 A.2d 549 (2001) (finding that "it is obvious that the General Assembly amended Section 1584 to supersede our decision in *Mazurek,* a case we decided only a few months before Section 1584 was amended. The Legislature's amendment of Section 1584 in December of 1998, specifically permitting DOT to act on an incomplete report, was a clear rejection of the reasoning in *Mazurek.*") Although *Boots* was decided subsequent to enactment of this amendment, Boots' conviction occurred prior to its enactment such that its provisions would not have applied to the case. Our Court did not discuss Section 1584 in *Boots.*

In the year following our decision in *Boots,* our Supreme Court decided *McCafferty.* The Supreme Court's decision, which did not rely on Section 1584, effectively overruled the strict approach utilized by this Court in *Mazurek* and *Boots. See also Harrington,* 563 Pa. at 574, n. 7, 763 A.2d at 391, n. 7. In *McCafferty,* the Supreme Court rejected a licensee's argument that a New Jersey report was defective because it did not contain all the information required by Article III. Specifically, the report "failed to identify the court in which action was taken and to indicate appellee's plea and whether the conviction was the result of forfeiture of bail, bond or other security." *McCafferty,* 563 Pa. at 161, 758 A.2d at 1164. In rejecting this argument, the Court noted that "[n]one of this information would have shed any light on the *conduct* underlying appellee's conviction; it is the *conduct* underlying the conviction that triggers PennDOT's duties under the Compact." *Id.* (emphasis added). The Supreme Court noted that "we fail to see how the technical, immaterial defects in the [out-of-state] report ... rendered PennDOT's suspension of appellee's license erroneous." *Id.,* 563 Pa. at 164, 758 A.2d at 1165.

The Supreme Court also discussed the distinct responsibilities that the Compact imposed on the home state and the reporting state. The Court noted that the requirements of Article III of the Compact are mandatory for the state reporting the conviction, but do not prohibit the home state's licensing authority from relying on the information contained in a report from another state. As the Court stated,

> Article III is clearly mandatory for a party state reporting a conviction within its jurisdiction. Article III therefore imposes an obligation on PennDOT only when it is the state reporting the conduct, not when it is the home state.... It does not prohibit PennDOT ... from relying on the information contained in the report....

*Id.,* 563 Pa. at 163, 758 A.2d at 1164–65 (footnote omitted). Turning to the then recently enacted 75 Pa.C.S. § 1584, the Court expounded upon the different roles of home and reporting states:

> [I]t is significant as [Section 1584] explicitly recognizes what is implicit in the structure of the Compact: states play different roles depending on whether

they are the home states or the convicting states.

*McCafferty*, 563 Pa. at 164, n. 14, 758 A.2d at 1165, n. 14. The Supreme Court looks at this same language of Article III and reads it as limiting language that is, the requirements following the language are imposed on "[t]he licensing authority of [the] *party* state" (emphasis added). Under this same analysis, the language in Article IV stating "the licensing authority of the *home* state," also indicates that the requirements that follow in that article are imposed on the home state, and not on the reporting state (emphasis added). The clear impact of the analysis in *McCafferty* is that Pennsylvania, in its role as a home state, is to review the report received from the reporting state to determine the nature of the conduct committed. It is with this information that the Pennsylvania licensing authority must determine the Pennsylvania analogue to conviction received in the home state, and apply the appropriate sanction.

Subsequent to the *McCafferty* decision, the Pennsylvania Supreme Court reversed *Mazurek* on the basis of the decision in *McCafferty*. On remand, this Court reinstated the license suspension, noting that "the reporting requirements of the Driver's License Compact (Compact), 75 Pa. C.S. § 1581, relate only to the reporting state and not to the home state, *i.e.*, Pennsylvania." *Mazurek*, 774 A.2d 792, 793 (Pa.Cmwlth.2001).

Our Court has recognized the interplay of the Section 1584 Amendment with the *McCafferty* decision:

Amended Section 1584 and *McCafferty*, in our view, are completely harmonious and establish a uniform rule for deciding all cases where compliance with Article III of the Compact is at issue.

*Catanzarite*, 765 A.2d at 1182. In describing this uniform rule we note that:

when DOT receives a report from a party state that omits information mandated by Article III of the Compact, DOT is not excused from acting on that report, nor is it, on the other hand, prevented from taking appropriate action against a licensee. The statute was plainly intended by the General Assembly to prevent DOT from being hamstrung by an out-of-state report that does not fully comply with Article III of the Compact.

*Id.*, 765 A.2d at 1182, n. 6.

**D. *Evidentiary Rules for Certification***

The requirement of certification of documents stems from concern regarding the authenticity and reliability of these documents.[10] Generally, the hearsay rule precludes out-of-court statements as found in documents, sought to be admitted for the truth of the matter therein contained.[11]

10. *See, e.g.,* Pa.R.Evid. 901 (Requirement of Authentication or Identification); Pa.R.Evid. 1002 (Requirement of Original).

11. As our Supreme Court eloquently described the basis for the hearsay rule:

The primary object of a trial in American courts is to bring to the tribunal, which is passing on the dispute involved, those persons who know of their own knowledge the facts to which they testify. If it were not for this absolute *sine qua non*, trials could be conducted on paper without the presence of a single flesh and blood witness. However, with such a pen-and-ink procedure, there would be no opportunity to check on testimonial defects such as fallacious memory, limited observation, purposeful distortions, and outright fabrication. The great engine of cross-examination would lie unused while error and perjury would travel untrammeledly to an unreliable and often-tainted judgment. Accordingly, nothing is more adamantly established in our trial procedure than that no one may testify to what somebody else

Although the rule is designed to ensure the reliability of evidence brought to a proceeding, "[o]ne defect in the hearsay rule is that it sweeps too broadly. It excludes much evidence that is reliable and necessary to reach a fair result." 1 Packel and Poulin, *Pennsylvania Evidence*, § 803–1 at 735–36 (1999). Our General Assembly has recognized this and enacted 42 Pa.C.S. § 6104 [12] as an exception to the hearsay rule.[13] As noted in Section 6104, the General Assembly enacted authentication procedures for official records kept within the Commonwealth. *See* 42 Pa.C.S.

§ 6103.[14] Additional authentication procedures were enacted for documents kept outside the Commonwealth. *See* 42 Pa. C.S. § 5328.[15] The reasoning behind these exceptions is as follows:

First, these records are likely to be trustworthy because of the official duty imposed on those preparing the records. Second, public officials may be inconvenienced by having to attend trials. That inconvenience justifies using copies of their records at trial rather than compelling their attendance. A third rationale, is that official records have quali-

told him. He may only relate what is within the sphere of his own memory brought to him by the couriers of his own senses.

*Johnson v. Peoples Cab Co.*, 386 Pa. 513, 514–15, 126 A.2d 720, 721 (1956), *cited in* 1 Packel and Poulin, *Pennsylvania Evidence*, § 802–1 at 733 (1999).

**12.** § 6104. **Effect of official records generally**
(a) **General rule.**—A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.
(b) **Existence of facts**—A copy of a record authenticated as provided in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness.

**13.** The statutory exceptions to the hearsay rule also serve as exceptions to the best evidence rule found in Pa.R.Evid. 1002. *See also* Pa.R.Evid. 901(b)(7) and (b)(10), 902(4) and (10), 1005.

**14.** § 6103. **Proof of official records**
(a) **General rule.**—An official record kept within this Commonwealth by any court, district justice or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publica-

tion thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is kept, authenticated by the seal of his office, or if there is no such officer, by:
(1) The Department of State, in the case of any Commonwealth agency.
(2) The clerk of the court of common pleas of the judicial district embracing any county in which the government unit has jurisdiction, in the case of any government unit other than a Commonwealth agency.

**15.** § 5328 **Proof of official records**

(a) **Domestic record.**—An official record kept within the United States, or any state, district, commonwealth, territory, insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by a judge of a court of record having jurisdiction in the governmental unit in which the record is kept, authenticated by the seal of the court, or by any public officer having a seal of office and having official duties in the governmental unit in which the record is kept, authenticated by the seal of his office.

ties of trustworthiness similar to records of regularly conducted activity.

1 Packel and Poulin, *Pennsylvania Evidence,* § 803(8)–1 at 766–67 (footnotes omitted). In the case *sub judice,* the majority cites *Rhoads v. Commonwealth,* 153 Pa.Cmwlth. 155, 620 A.2d 659 (1993), a license suspension case in which we noted that out-of-state drivers' records must be validated in accordance with Section 5328(a). Subsequent to our decision in *Rhoads,* the Legislature amended 75 Pa. C.S. § 1550 (which addresses the judicial review of license proceedings) to include a provision that addressed the admissibility of out-of-state documentation. The amendment to Section 1550 provides:

> In any proceeding under this section, documents received by the department from the courts or administrative bodies of other states or the Federal Government shall be admissible into evidence to support the department's case. In addition, the department may treat the received documents as documents of the department and use any of the methods of storage permitted under the provisions of 42 Pa.C.S. § 6109 (relating to photographic copies of business and public records) and may reproduce such documents in accordance with the provisions of 42 Pa.C.S. § 6103 (relating to proof of official records). In addition, if the department receives information from courts or administrative bodies of other states or the Federal Government by means of electronic transmission, it may certify that it has received the information by means of electronic transmission and that certification shall be prima facie proof of the adjudication and facts contained in such an electronic transmission.

75 Pa.C.S. § 1550(d).

In *Mackall v. Department of Transportation, Bureau of Driver Licensing,* 680 A.2d 31 (Pa.Cmwlth.1996), we affirmed a trial court decision reinstating a Pennsylvania license suspension based upon a West Virginia DUI conviction. DOT initiated the proceeding based upon a photocopy of a Uniform Traffic Citation and Complaint and an Abstract of Judgment from West Virginia that DOT presented under its own seal and certification. The licensee appealed, arguing that the documents should not have been admitted into evidence because they lacked appropriate validation. In support of his argument, the licensee relied on 42 Pa.C.S. § 5328(a) as interpreted by *Rhoads* ("providing that out of state records must be validated according to Section 5328(a) of the Act").[16] We affirmed the trial court's decision, noting that recent legislative enactments eliminated the *Rhoads* analysis:

> In *Rhoads,* this Court recognized out-of-state records must be validated according to Section 5328(a) of the Act. Subsequent to *Rhoads* the legislature amended Section 1550 of the Code by adding subsection (d). In doing so the General Assembly lessened the Department's burden. Pursuant to Section 1550(d) of the Code, the Department is no longer required to comply with the evidentiary rules set forth in Section 5328(a) of the Act. Instead, the Department may now treat the documents received from a participating state as documents of the Department. These documents may then be reproduced, and under seal of the Department, submitted to an adjudi-

---

**16.** We note that in the case *sub judice,* the majority relies on the *Rhoads* decision in support of their rationale that "PennDot must still provide certified documentation of a licensee's conviction for DUI from the reporting state."

catory body to support the Department's case.

*Mackall,* 680 A.2d at 34 (footnotes omitted). We explained further:

> The legislature clearly intended to depart from the strict evidentiary requirements of Section 5328(a) of the Act when it amended Section 1550 of the Code by adding subsection (d). To hold otherwise requires this Court to completely disregard the language of Section 1550(d) of the Code, or find the section has no effect. Such a result is absurd and contrary to the principles of statutory construction.
>
> * * * *
>
> In reviewing the two statutes, we conclude Section 1550(d) of the Code relaxes the evidentiary rules set forth in Section 5328(a) of the Act, as they relate to the admission of out-of-state documents that are transmitted to the Department.

*Id.* (citations omitted).

### E. Tripson's fatal shortcomings

The focus of licensee's argument in *Tripson* was that "75 Pa.C.S. § 1550(d)(1) does not permit the Department to certify the identity of the administrative body of the other state from which the Department received the records...." *Tripson,* 773 A.2d at 197. The Court did not address Section 1550; however, it did agree with licensee's argument, noting that "[t]he Department may not certify that the documents are reports of convictions from other jurisdictions' licensing authorities if the documents themselves contain no such certification from the reporting jurisdiction." *Tripson,* 773 A.2d at 197. This

Court read Article III to indicate that the licensing authority of the reporting state "shall" provide the report to the home state. Based on this word "shall" the Court found that part of DOT's burden of proof was to clearly establish that the source of the documents was the licensing authority. This Court mentioned the Supreme Court's decision in *McCafferty,* but determined that the issue in that case was different because it dealt with merely "technical reporting requirements" and sufficiency of the information. *Tripson,* 773 A.2d at 198. This court determined that failure to directly establish the source of the document was "more than a mere technical requirement" because "the critical issue is whether the documents themselves may be relied upon...." *Id.*[17]

There are several flaws in this analysis. The majority, by seeking to distinguish *McCafferty* as involving mere technical violations, does not follow the Supreme Court's interpretation of the duties imposed by the different Articles of the Compact. Under the Supreme Court's analysis, Article III is simply a direction to the reporting state that the licensing department is responsible for gathering and forwarding reports to the home states. The home state, after receiving notice, is responsible for then imposing the appropriate sanction. The Legislature, by enacting 75 Pa.C.S. § 1550(d), allowed for the licensing authority within Pennsylvania to certify that documents were received from the reporting state and that such documents would be admissible in court based on the Administrator's certification. The Legislature did not intend for such evidence to be conclusive, but did intend for

---

17. In the case *sub judice,* the majority distinguishes *McCafferty,* as this Court did in *Tripson,* by noting that *McCafferty* dealt with only technical violations. This Court reads the "[t]he licensing authority of a party state" language to require DOT to establish that the documents received from another state absolutely came from the licensing authority of the reporting state. This analysis misses the impact of the Court's discussion on the interplay of the various articles with the home and reporting states.

this evidence to create a rebuttable presumption of validity. The requirement that the report come from the licensing authority of the reporting state was not intended to be a threshold admissibility issue. In reading Article III in this manner, the majority hearkens back to the strict interpretation repudiated by our Legislature and State Supreme Court.

The second error made by the majority is that our reasoning in *Tripson* ignores and undermines the clear dictates of 75 Pa.C.S. § 1550.[18] Section 1550 provides that reports "received by the department from the courts or administrative bodies of other states ... shall be admissible into evidence to support the department's case." Regarding reports received electronically, the section specifically indicates that the department "may certify that it has received the information by means of electronic transmission and that certification shall be prima facie proof of the adjudication and facts contained in such an electronic transmission." The provision very clearly does not limit admissibility of reports to those that come from the licensing authority. Rather, all reports from governmental units of other states are admissible. The Legislature could have written into Section 1550(d) a provision that only documents clearly marked as having been sent by the licensing authority would be admissible, but no such provision is there. To imply such a provision, I believe, undermines the policies clearly enumerated by our Legislature and Supreme

Court. The Legislature, in adopting 75 Pa.C.S. § 1550(d), made the determination that information received from other government units was credible such that standard authentication measures were not required. This Court, in *Tripson*, effectively undermines the clear authentication admissibility requirements set out by our General Assembly. In doing so, the decision is fatally flawed. The Compact was meant to ease DOT's burden in cases dealing with out-of-state convictions, not heighten it. However, under the majority's view, DOT appears to have an increased evidentiary burden where the Compact is involved.

### F. *Application to Gallant*

Article III of the Compact, as the majority correctly notes, requires that the report of the foreign state's conviction be reported to DOT by "[t]he licensing authority of the party state." Here, the underlying report from Illinois admittedly contains no cover letter or specific certification from the Illinois licensing authority. However, these are not required by the Compact. In fact, this Court has held that "the Commonwealth may rely on out-of-state conviction reports that do not strictly adhere to Article III of the Compact, as long as the conduct of the Licensee is evident and the report contains sufficient information to form the basis of the Department's actions." *Kiebort v. Department of Transportation, Bureau of Driver Licensing*, 778 A.2d 773, 776 (Pa.Cmwlth. 2001).[19]

---

18. The majority tries to justify this judicially created requirement on the principles of reliability and authentication; however, the Court does not take into account discussion of the applicable statutory provisions that concern authentication and admissibility of out-of-state documentation in a motor vehicle license suspension case. Indeed, in the case *sub judice*, the majority relies on the *Rhoads* case that was itself replaced by 75 Pa.C.S. § 1550(d) as found by this Court in *Mackall*.

19. The document includes "State of Illinois Report of Conviction" in the heading, shows Licensee's original offense as driving under the influence of alcohol, and entry of a plea of guilty, and specifies at the bottom that it is "State of Illinois Control Data" that was "Computer Generated and Verified to the Original Source Document." Further, Licensee *admits* he was convicted of DUI in Illinois.

As the Court is presumably not familiar with the internal filing and certification requirements of other Compact state members, it would be difficult, if not impossible, for the Court to evaluate the authenticity of materials that come into Pennsylvania electronically from other Compact state members. The Legislature, through the Compact language as well as 75 Pa.C.S. § 1550(d), has entrusted that responsibility to DOT's Director of the Bureau of Driver Licensing. As this Court has previously found, the Director's certification is *"prima facie* proof that creates a rebuttable presumption of correctness." *Bergen v. Department of Transportation, Bureau of Driver Licensing,* 785 A.2d 157, 161 (Pa.Cmwlth.2001), (citing *Richards v. Department of Transportation, Bureau of Driver Licensing,* 767 A.2d 1133 (Pa.Cmwlth.2001)). The licensee then has the burden to rebut that presumption with evidence that the documentation is not, in fact, correct. Here, conjecture that the report does not appear to come from the foreign state's licensing authority, in my opinion, does not meet that burden. The majority opinion effectively nullifies the Secretary's certification, and eliminates the rebuttable presumption such certification lawfully creates. The certification is, itself, evidence that the documents were received from the licensing authority; the documents need not have additional certification.

Finally, the General Assembly enacted the Compact and, in doing so, adopted the language of the Compact that delegated authority to administer the Compact to the Director of the Bureau of Driver Licensing. It is a long-standing principle of our law that public officials are presumed to perform their duties properly. *See generally Bethlehem Steel Co. v. Board of Finance & Revenue,* 431 Pa. 1, 6, 244 A.2d 767, 769–70 (1968) ("we must assume that public officials properly perform their duties."); *Powell v. Middletown Twp.*

*Board of Supervisors,* 782 A.2d 617, 622–23 (Pa.Cmwlth.2001), *petition for allowance of appeal denied,* 568 Pa. 730, 797 A.2d 918 (2002) ("It is presumed that public officials have properly acted in accordance with the law until proven otherwise."); *Pennsylvania State Ass'n of Twp. Supervisors v. Department of General Services of the Commonwealth,* 666 A.2d 1153, 1156–57 (Pa.Cmwlth.1995), *aff'd,* 547 Pa. 160, 689 A.2d 224 (1997) ("In the absence of proof or even allegations to the contrary, this Court may rely on the time-honored presumption that public officials will perform their duties properly....").

As noted by our Supreme Court in regards to the Compact and the role of the administrator, we are "to give deference to valid administrative interpretations by agencies charged with enforcement responsibilities." *Harrington,* 563 Pa. at 577, 763 A.2d at 393. In citing this principle, the Court then explained:

Here the Bureau indicates that it is its practice to require sufficient information from a reporting state to reasonably guard against arbitrary and erroneous suspensions, in particular, information specifically identifying the licensee and his offense, and nothing presented in the facts of this case or in [licensee's] arguments provides a basis for presently questioning the Bureau's assurance in this regard.

*Id.* This same reasoning applies to the Bureau's certification. Further, based upon this analysis, since the Director of Pennsylvania's Bureau of Driver Licensing certified the documents and submitted them under the Department's seal pursuant to Section 1550, Pennsylvania appropriately applied the Compact to suspend Gallant's Pennsylvania license.

The fact that the majority would prefer a different format from the one used by Illinois or another Compact state, or disagrees with that state's administrative de-

cision not to include with its transmission, a cover letter, its own express certification or some other indicia that the document has come from the licensing authority, does not, in my view, rebut the "presumption of correctness." The Compact does not require the specific format the majority would like to see. Further, DOT cannot control the format utilized by every other Compact state to transmit its documents and, consequently, we should not impose that requirement on DOT.[20] Absent explicit Compact language, disagreement with the formats used by various states is no basis to allow drunk drivers to continue to drive with impunity.[21]

## II. Whether wrongly decided or not, Tripson is factually distinguishable and has no bearing on the outcome in this case

I think that this case is distinguishable from *Tripson* because Gallant admitted at

the hearing that he was convicted of driving under the influence (DUI) in Illinois on the date in question. (N.T. 10.) Thus, there is no question that Gallant, who was represented both in the Illinois proceedings (N.T. 10) and in the case *sub judice*, knew the basis upon which DOT premised the suspension, and that the underlying documentation regarding the conviction is true and correct.[22]

Additionally, under the provisions of 75 Pa.C.S. § 1550(d)(1), since DOT has certified that it received the records through electronic transmission, "that certification shall be prima facie proof of the adjudication and facts contained in such an electronic transmission."[23] *See Koterba v. Department of Transportation, Bureau of Driver Licensing*, 736 A.2d 761 (Pa. Cmwlth.1999), *appeal dismissed*, 561 Pa. 703, 751 A.2d 195 (2000), *cert denied*, 531

20. Although the majority does not believe imposing this additional requirement on DOT is onerous, I respectfully disagree. The administrative burden of communicating with every state member of the Compact each time a transmitted record is received to request that it send another report that conforms to *our* evidentiary requirements would be excessive.

21. To the extent that the majority imposes this additional certification requirement on the other Compact party states without their consent, and in conflict with their regulations, it would appear to be a prohibited unilateral amendment of an interstate compact.

22. As noted by our Supreme Court in *McCafferty*, "[t]he due process clause does not create a right to be deliberately obtuse as to the nature of a proceeding. Appellees here knew exactly what was happening to them and why." *McCafferty*, 563 Pa. at 161, 758 A.2d at 1163. *Accord Horvath v. Department of Transportation, Bureau of Driver Licensing*, 773 A.2d 199, 206 (Pa.Cmwlth.2001) ("Horvath concedes in his brief that on January 3, 2000, he was convicted in New York on the DWAI charge. *See* Horvath's Brief, p. 5. Horvath does not allege that his conduct did

not warrant such a charge or that he was wrongfully convicted of that offense. Hence, we do not believe that DOT erred in taking action to suspend Horvath's Pennsylvania license in accordance with Article IV(a)(2) of the Compact. *McCafferty*.)"; *Catanzarite*, 765 A.2d at 1182 ("Further, because Catanzarite did not deny that he was convicted of DUI in Ohio or that he knew why DOT was seeking to suspend his license, the absence from the Ohio report of a citation to the particular statute under which Catanzarite was convicted did not violate his due process rights. In the words of the Supreme Court, the due process clause did not give Catanzarite the right to be "deliberately obtuse" as to the nature of the suspension proceedings.")

23. As noted earlier, the Compact requires only that the licensing authority send the report to DOT. DOT's own certification, signed by Rebecca Bickley, the Director of the Bureau of Driver Licensing, states that it did. It reads in pertinent part:

> I HEREBY CERTIFY THAT THE FOREGOING AND ANNEXED IS A FULL, TRUE AND CORRECT CERTIFIED PHOTOSTATIC COPY OF;

U.S. 816, 121 S.Ct. 53, 148 L.Ed.2d 21 (2000) (affirming suspension of driver license based on New Jersey conviction report received electronically that had not been certified by any New Jersey official, but had been certified by the Secretary of DOT and by the Director of the Bureau of Driver Licensing); *see also Bergen* (reversing trial court's sustaining of licensee's appeal based on our agreement with DOT's argument that requiring certification from out of state officials of documents transmitted electronically "would negate electronic transmissions."). However, although not conclusive, this evidence establishes a rebuttable presumption that the licensee would be free to contest at a hearing.

Finally, *Tripson* was not a case involving electronic transmissions and, as such, does not control our resolution of the case *sub judice.*

### *CONCLUSION*

The privilege of driving is of significant importance in our mobile society. However, our Legislature has also determined that there are certain situations, where, in the interest of public safety, driver's licenses are appropriately suspended. The General Assembly's enactment of both the Compact and 75 Pa.C.S. § 1550(d) evidence a clear intention to liberalize admissibility of out-of-state driving convictions. The stated goal of the Legislature is to suspend licenses of those found to have committed certain motor vehicle violations while out-of-state. Our Supreme Court has acknowledged this intention and has issued opinions forwarding these same goals. Although mindful of the concerns expressed by our Court in *Tripson* and in the majority opinion in the case *sub judice,* specifically protecting drivers from having their driving privileges suspended without conformance to proper procedural safeguards, I believe the majority of this Court misinterprets and misapplies the mandatory authority of our Supreme Court, and the stated intention of our General Assembly. In my view, DOT Certification creates only a *rebuttable presumption* that the reporting state's documentation was received from the licensing authority and is correct. A licensee can offer evidence to rebut this presumption demonstrating, for example, that he was in fact not the person convicted, or that the conviction was not for a statutorily enumerated offense. I do not think it appropriate for the majority, in an exercise of judicial fiat, no matter how well intentioned, to impose evidentiary requirements clearly rejected by both the Legislature and the Supreme Court. Because I believe this majority incorrectly applies the laws of our Commonwealth, I must respectfully dissent.

Judge SIMPSON joins.

---

. . . .

2) Record of Conviction Detail, Out of State Driver Violations Report received by the Department electronically **from the Licensing Authority for the State of ILLINOIS,** operating under the influence of liquor or drugs, date of violation 10/23/99 . . . .

CERTIFIED TO as prescribed by Sections 6103 and 6109 of the Judicial Code, Act of July 9, 1976 P.L. 586, *as amended,* 42 Pa. C.S. §§ 6103 and 6109.

IN TESTIMONY WHEREOF, I HAVE HEREUNTO SET MY HAND AND SEAL THE DAY AND YEAR AFORESAID.

(Commonwealth's Exhibit 1, emphasis added). The certification of the Secretary and the Bureau Director that the reports were received electronically from the reporting state's licensing authority, should be sufficient to permit the report to be introduced into evidence in support of the Bureau's *prima facie* burden of proof.