### Scott R. KILGORE

v.

### COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 11, 2003.

Decided Sept. 24, 2003.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel, In Charge, Harrisburg, for appellant.

Michael J. Brevetta, Sharon, for appellee.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.

This case involves application of the reporting requirements of the Interstate Driver's License Compact to documentation sent from the licensing authority of the state of New Mexico to the Pennsylvania Bureau of Driver Licensing (Bureau). Under Article III of the Compact, the licensing authority of a state is required to "report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee." 75 Pa. C.S. § 1581, Article III. The home state, upon receipt of such a report, is required by Article IV of the Compact to "give the same effect to the conduct reported pursu-

ant to Article III of this compact as it would if such conduct had occurred in the home state."

New Mexico sent a conviction report which included two parts. The first part, titled "DWI Citation," stated that Scott Kilgore (Licensee) had been cited for having a blood alcohol level of approximately ".19/.20" while operating a motor vehicle, in violation of N.M. Stat. § 66–8–102, which prohibits driving under the influence of alcohol. The citation also contained Licensee's name, home address, Pennsylvania driver's license number and social security number, as well as a physical description of him. The charging officer signed the citation and included his badge number. The report directed the charging officer to forward the report to the court and directed the court to complete the abstract of record portion of the report.

The second part of the conviction report, entitled "abstract of record," contained the date that the trial court conducted its hearing on the DWI charge, noting that Licensee was represented by counsel and identifying that counsel by name. The abstract indicated that Licensee pled guilty to the DWI charge and was signed by the trial judge.

The conviction report directed the trial judge, upon completion, to forward it "to the Motor Vehicle Division, Driver Services Bureau, DWI section" and provided the address for this agency. The Motor Vehicle Division is part of the New Mexico Taxation and Revenue Department, and is, under N.M. Stat. §§ 66–5–50.A & 66–1–4.4.F, the driver's licensing authority for that state.

As a member of the Compact, the New Mexico licensing authority initiated the process of informing the Pennsylvania licensing authority of Licensee's conviction. Upon receipt of the conviction report, a supervisor with the Records Unit for the Driver Services Bureau prepared a letter to the Pennsylvania licensing authority and attached it to the report. The letter stated:

> Enclosed are New Mexico abstracts of convictions that were issued to drivers identified as licensed in your state.
>
> These are for your records only **PLEASE DO NOT MAIL BACK** as we have already recorded the following abstracts.

(New Mexico Driver Services Bureau letter). The letter was signed by the Supervisor and was mailed, with the attached conviction report, to the Pennsylvania licensing authority.[1]

Upon receipt of this Article III mandated mailing from the New Mexico licensing authority, the Pennsylvania licensing authority began its obligations under Article IV of the Compact. The Bureau issued a notice to Licensee indicating that it would be suspending his license because the New Mexico offense was similar to Section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731 (relating to driving under the influence of alcohol or controlled substance). Licensee appealed this suspension notice to the Mercer County Court of Common Pleas.

The trial court conducted a hearing, at which counsel for the Bureau sought to introduce a packet of documentary evidence that, *inter alia*, contained the New Mexico Driver Services Letter and attached conviction report. The documents had been certified by the Pennsylvania

---

1. It is unclear from the record whether abstracts of convictions for other Pennsylvania licensees were submitted with the letter, although the language of the letter suggests that this may have been the case.

Secretary of Transportation and the Director of the Pennsylvania Bureau of Driver Licensing. Licensee objected to the admission of the documents on the basis of this Court's decision in *Tripson v. Department of Transportation, Bureau of Driver Licensing*, 773 A.2d 195 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 690, 796 A.2d 320 (2002), arguing that the documents themselves lacked certification from the New Mexico licensing authority. The trial court sustained this objection and precluded the Bureau's introduction of these documents into evidence. Since the Bureau's documentary evidence was precluded, the trial court concluded that the Bureau had failed to meet its burden, resulting in the court sustaining Licensee's appeal. The Bureau appeals this decision.

 The Bureau argues that the trial court erred in precluding introduction of the documentary evidence, specifically the letter and conviction report, and that these documents satisfy its *prima facie* burden of proof. Licensee's counsel has filed a brief contesting these arguments.[2]

 In cases involving reciprocal license suspensions, such as this one, the Bureau has the burden of proving that the conviction report was sent by the reporting state's licensing authority. *Gallant v. Department of Transportation, Bureau of Driver Licensing*, 805 A.2d 1 (Pa.Cmwlth. 2002) (*en banc*); *Tripson*.

The Bureau maintains that the New Mexico Driver Services Letter, which references the conviction report, as well as the conviction report attached to the Letter, clearly indicate that these documents were sent from the New Mexico licensing authority and, therefore, should have been admitted into evidence. Licensee challenges the Bureau's position, maintaining that the conviction report was not certified from the licensing authority of the reporting state and that, under *Tripson* and its progeny, the Bureau may not certify that it came from the licensing authority of the reporting state.[3]

In *Tripson*, this Court reversed the Bureau's suspension of privileges based on an out-of-state conviction when the conviction report lacked *any* indication that it was from the licensing authority of the reporting state. Contrary to Licensee's position in this case:

> This Court in *Tripson* did not hold that Section 1532(b)(3) requires that an out-of-state conviction be certified by the submitting state. This Court merely stated that "[t]he Department may not certify that the documents are reports of convictions from other jurisdictions' licensing authorities *if the documents themselves* contain no such certification from the reporting jurisdiction. *Id.*, 773 A.2d at 197.

*Bergen v. Department of Transportation, Bureau of Driver Licensing*, 785 A.2d 157, 165 (Pa.Cmwlth.2001) (emphasis added). Phrased another way, "the Court held in *Tripson* that it was a part of DOT's burden in Compact cases to offer proof that the licensing authority of the convicting state transmitted to DOT a report of the licensee's conviction." *Siekierda v. De-*

---

2. Our scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether it committed an error of law or abused its discretion. *Gallant v. Department of Transportation, Bureau of Driver Licensing*, 805 A.2d 1, 3 n. 3 (Pa.Cmwlth.2002).

3. The Bureau also maintains that we should overrule our decision in *Tripson*. Because we have declined to do so, *en banc*, in our decision in *Gallant*, and in the absence of guidance to the contrary from the Pennsylvania Supreme Court, we again decline to revisit our holding in *Tripson*.

*partment of Transportation, Bureau of Driver Licensing,* 798 A.2d 840, 843 (2002), petition for allowance of appeal *granted,* 571 Pa. 711, 812 A.2d 1232 (2002).

Our subsequent opinions applying *Tripson* have treated as determinative whether, on the face of the documents submitted by the Bureau, there is evidence that the licensing authority transmitted the documents to the Bureau. In cases in which the transmitting state's licensing authority is not identified on the face of the offered documents, we have found the Compact requirements unsatisfied.[4] In contrast, in cases where the proffered documents reference the licensing agency for the reporting state, we have found that the Compact requirements were satisfied.[5]

 The Compact is a contractual agreement between the member states. *See Sullivan v. Department of Transportation, Bureau of Driver Licensing,* 550 Pa. 639, 642, 708 A.2d 481, 482 (1998) (noting that "The Compact is a contractual agreement among states intended to promote compliance with each party state's driving laws and regulations" and that each state "has enacted the Compact into law by statute."). Because it is a contractual document, we are required to "interpret its terms according to their plain meaning," and may neither add nor remove requirements set forth therein. *Id.* at 645, 708 A.2d at 484. We may "not

rewrite the terms of a contract, nor give them a meaning that conflicts with that of the language used." *Id.* Article III of the Compact specifically provides that "[t]he licensing authority of the party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state." 75 Pa.C.S. § 1581. Because the Compact language requires that the report be sent from the licensing authority, under *Gallant* and *Tripson* we have required that the documents submitted contain some indicia that, in accordance with Article III of the Compact, they were sent from the licensing authority. We have not, however, required these documents to contain a specific phrase or language to show their origin, as to do so would add contractual language to the Compact which, under *Sullivan,* we are not permitted to do. Imposing our own Pennsylvania-specific reporting requirements, which are not in the Compact, would undermine its reciprocal nature.

In the instant case, the documents clearly identify, on their face, that they were sent to the Bureau by the licensing authority of New Mexico. The conviction report explicitly shows that the licensing authority was the ultimate recipient of the report, after it was completed by the arresting officer and signed by the trial judge. In its forwarding letter to the Bureau, the licensing authority indicates that it is sub-

---

**4.** *See Gallant* (submitted documents indicated their origin was from the State of Illinois and Cook County Court, but not specifically from the licensing authority); *Snyder v. Department of Transportation, Bureau of Driver Licensing,* 808 A.2d 318 (Pa.Cmwlth.2002) (proffered documents indicated they came from North Carolina, but made no reference to licensing authority of that state), *Tripson* (submitted documents contained no reference to licensing authority of reporting state).

**5.** *See, e.g., Ferraguti v. Department of Transportation, Bureau of Driver Licensing,* 824

A.2d 354 (Pa.Cmwlth.2003) (affirming license suspension because proffered documents indicated they came from "Division of Motor Vehicles," even though they did not specifically identify from which state); *Dillaman v. Department of Transportation,* 811 A.2d 98 (Pa. Cmwlth.2002) (imposing license suspension based on proffered documents because a court abstract submitted from reporting state also contained date stamp that had the heading "Department of Public Safety, Driver Improvement Branch"); *Bergen.*

mitting the conviction report to the Pennsylvania licensing authority in fulfillment of its Article III reporting requirements. From this, there is no doubt that the licensing authority sent the conviction report.[6] Although the conviction report does not indicate that it was prepared by the licensing authority of New Mexico, neither the Compact nor our precedent requires it to be. The Compact requires only that the licensing authority forward the conviction report, not that the licensing authority author the report. Where, as here, the documents proffered by the Bureau contain evidence that clearly shows they were transmitted by the licensing authority of the reporting state, such documents should not have been precluded from admission into evidence. Because the documents proffered by the Bureau should have been allowed into evidence, and because these documents clearly indicate that Licensee pled guilty to driving while intoxicated, Licensee's appeal should not have been sustained.

Accordingly, for these reasons, we reverse the trial court's order.

### ORDER

NOW, September 24, 2003, the order of the Court of Common Pleas of Mercer County in the above-captioned matter is hereby reversed.

6. In support of its position, the Bureau cites and discusses several New Mexico statutory provisions that set forth the Compact reporting procedure employed in New Mexico. Although not determinative of this matter, the New Mexico statutory procedures underscore the already clear origin of these documents. In New Mexico the judge who convicts a licensee is required to forward the certified conviction report to the New Mexico Taxation and Revenue Department which, under N.M. Stat. §§ 66–5–50.A & 66–1–4.4.F, is the licensing authority for the state. "[U]pon receiving a record of the conviction in this state of a nonresident driver [the licensing authority is required] to forward the record to the motor vehicle administrator in the state wherein the person so convicted ... is a resident," pursuant to N.M. Stat. § 66–5–25. The New Mexico reporting procedures clearly indicate that the licensing authority is responsible for sending the conviction reports mandated by Article III to the respective home states. The statutory language indicates that the licensing authority does not need to prepare separate reports, but may use copies of the reports that the trial courts are required to send to the licensing authority.

This is precisely what the New Mexico licensing authority did in this case. The language on the conviction report specifically indicates that the completed reports must go to the licensing authority. Indeed, the document goes so far as to provide the specific address for the licensing authority to which the document must be forwarded.